Shalleck, J.
These are summary proceedings brought to recover the possession of real property, in which the landlord challenges the constitutionality of the Business Rent Law (L. 1945, ch. 314, as amd.), insofar as it applies to office space.
The landlord contends that the emergency which gives constitutional validity to the statute has ended. The Attorney-General of the State of New York appears in these proceedings, pursuant to section 71 of the Executive Law, in support of the constitutionality of the statute.
During the course of the trial the landlord subpoenaed Hon. Joseph P. Carlino, Majority Leader of the New York State Assembly and Chairman of the Temporary State Commission to Study Rents and Rental Conditions, to testify on behalf of the landlord.
The Temporary State Commission to Study Rents and Rental Conditions was created in 1948, by chapter 675 of the Laws of 1948, to study, among other things, rental conditions of commercial and business space (including office space), and to report its findings and recommendations to the Legislature. The life of the commission has been extended from year to year. Since 1948 it has been the fact-finding agency of the Legislature, and has rendered annual reports to it.
Prior to Mr. Carlino’s response to the subpoena, the landlord’s attorney stated in court that there were two subjects concerning *513 which he desired to question Mr. Carlino. They were: 1. Whether, since the meeting of the commission on December 15, 1953, any survey concerning office space had been made by or for the commission or its staff. 2. Whether the commission staff and office had been disbanded.
This was to be the scope of inquiry, and Mr. Carlino thereafter appeared and gave testimony pursuant to the subpoena. At a point in the interrogation by the landlord’s attorney, Mr. Carlino claimed, as a member of the State Legislature, a privilege and immunity from testifying with regard to these two lines of inquiry. Supported by the Attorney-General, Mr. Carlino based his position upon section 11 of article III of the Constitution of the State of New York, which provides as follows: For any speech or debate in either house of the legislature, the members shall not be questioned in any other place. ’ ’
Mr. Carlino’s position was also predicated on the doctrine of the separation of powers between the legislative, executive and judicial branches of government, which, it was contended, precluded the inquiry in which landlord’s attorney was engaged.
Mr. Carlino’s claim of privilege was overruled. In denying the plea for immunity and directing the witness to answer, the court rendered its opinion as follows:
I had been asked by the Attorney-General in these consolidated proceedings in effect to quash a subpoena heretofore issued by the landlord and served upon Hon. Joseph Carlino, a member of the New York State Legislature, who, as such, has been the Chairman of the Temporary State Commission to Study Rents and Rental Conditions.
The purpose of the subpoena was to induce the testimony of Mr. Carlino on two lines of inquiry by the landlord. They are: 1 — Has the commission, its staff or anyone else on its behalf, made any survey with regard to office space since its meeting of December 15,1953 ?; and 2 — Has the commission staff and office been disbanded? I find that these questions would be directed to matters of fact pertinent and relevant to the issues involved.
Almost at the moment when Mr. Carlino was to appear in my court, the proposed witness, I am advised by the special assistant attorney-general, communicated with the Attorney-General’s office to ascertain whether or not he, as a member of the Legislature, were immune from questioning at the trial of these proceedings concerning his activities as chairman of the commission. The Attorney-General informed him that his immunity was complete and that his appearance in court was unnecessary, as least until he was directed to appear by the court.
*514 The matter is now before me for disposition. It is one of first impression in this State.
While other jurisdictions in the United States and common-law countries elsewhere have had occasion to rule on various aspects of similar questions arising under circumstances which may be likened to these, research on the part of counsel for the parties to this proceeding and independently by me has failed to produce any precedent in New York. Nor may it be said that the precise facet of the problem here presented impelled the courts’ determination in those cases which bordered on it. At best, therefore, I have to analogize from such precedents as do appear in the law books.
The Attorney-General argues with unction that section 11 of article III of the Constitution of the State of New York makes Mr. Carlino’s words and deeds, in his official capacity, privileged and immunizes him for all purposes from testifying in any court and specifically in these, proceedings.
That provision absolves a legislator of liability in these'terms: “ For any speech or debate in either house of the legislature, the members shall not be questioned in any other place.”
Do the words “ questioned in any other place ” encompass all places and circumstances, or are they delimited by the purpose and intent for which the provision was made a part of our State Constitution and similar provisions parts of the Constitutions of forty other States? Some circumscription there must be; for otherwise the immunity granted would be greater than needed and set legislators apart as a privileged group — an end entirely inimical to the basic concepts of our democratic way of life.
No one, however, may question the need for some immunity. For it was that need which found its place in our Constitution in the terms therein expressed. But the immunity comes solely within the ambit of protection — not privilege. And that protection transcends the mere geographical confines of the halls of legislative debate. It is carried elsewhere with the legislator himself so as to constitute a defense to a suit, for instance, for libel and slander for his utterances made therein in his official capacity.
This is, as it should be. Otherwise, no legislator, as the People’s representative, could properly exercise the functions of his office. That freedom from civil or criminal prosecution for his legislative activities should, however, be commensurate with the fear of such actions it is sought to eradicate from his mind. Not only that, but utterances not partaking precisely of the *515 legislative character should also be qualifiedly privileged. So that, if there is an absence of malice and the presence of good faith, they, too, should immunize the legislator.
I would judge that none of the parties hereto would quarrel with these fundamentals. At this point, however, there is hound to come the dichotomy. It is here that I find that within the purview of what I have just said there is no reason not to direct Mr. Carlino to testify. Because of such ruling I need not discuss the academic problem of whether immunity extends to a legislator’s work in committee • — a question raised by landlord’s counsel.
On the other hand, I find nothing in the proposed line of questioning which could be labelled inconsistent with the separation of powers. The checks and balances resulting from such. separation would be more likely to be fostered than to be hurt by compelling the testimony. The immunity is a constrained one — born of very basic necessities. It is not a complete license for which there is to be no accounting. Suffice it that I have no desire to broaden a privilege so long enjoyed because of its restraint.
I agree with the Attorney-General on two of his main contentions: that the immunity, though it partakes of a personal advantage, is nevertheless couched in the public good; and secondly, that the Attorney-General cannot waive the legislator’s right by his own independent action. Despite this agreement in principle, application thereof to the problem here presented, impels a result contrary to that sought by him.
As to the first, the public good which is sought by the privilege to be protected, does not condone a carte blanche immunity. It extends only so far as the public good is served thereby. Thus it is, by what I think the law is, that it is confined to a freedom from suit, civil or criminal, for his utterances and activities qua legislator. In these proceedings Mr. Carlino is no party. By testifying he cannot be held either criminally or civilly for anything he might have done or said in the Legislature or in the committee over which he presides. The inquiry sought to be directed to him, and to which I shall strictly hold the landlord, cannot subject him to suit of any kind. Indeed, the attorney for the landlord adjures such purpose and unequivocally waives any right there may be thereto.
As to the second, just as I hold the Attorney-General cannot waive the privilege for the legislator, so, I hold, he cannot claim immunity in advance, for him. It is a right of protection to be claimed at the time its holder is sought to be deprived of it. It *516 was for that reason that I ordered Mr. Carlino’s presence and made my ruling- when the privilege was claimed.
I have, of course, omitted all reference to out-of-State precedents. Both sides have had the benefit of briefing them all. It was based upon full consideration of all arguments and available precedent that my conclusion has been reached.
And to that the Attorney- General and the tenants have an exception, as does the witness.